IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JAYME K. ALLEE BUTLER                                        PLAINTIFF

     v.                              CIVIL NO. 04-2149

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                 DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Jayme K. Allee Butler brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).

**Procedural Background:**

The applications for DIB and SSI presently before this court were filed on July 19, 2002, alleging an inability to work since December 31, 1999, due to a seizure disorder, ankle problems and pain, headaches, depression and right shoulder pain. (Tr. 51-53, 232-235). An administrative hearing was held on September 10, 2003. (Tr. 257-295). Plaintiff was present and represented by counsel.

By written decision dated January 20, 2004, the ALJ found that plaintiff has an impairment or combination of impairments that are severe. (Tr. 19). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments do not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 19). The ALJ found plaintiff retained the residual functional capacity

(RFC) to perform a full range of light work. (Tr. 19). With the help of vocational expert testimony, the ALJ found plaintiff could perform her past relevant work as a cashier. (Tr. 19).

Plaintiff appealed the decision of the ALJ to the Appeals Council. After considering additional evidence submitted by plaintiff, the Appeals Council denied plaintiff's request for review of the hearing decision on April 30, 2004.[1] (Tr. 4-7, 246-256, 296-297). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties submitted appeal briefs and this case is before the undersigned pursuant to the consent of the parties. (Doc. # 7,8).

**Evidence Presented:**

At the time of the September 10, 2003, administrative hearing, plaintiff was twenty-seven years of age and obtained an eleventh grade special education. (Tr. 264-265). Plaintiff testified she could read at the third grade level and could write simple notes. (Tr. 266). Plaintiff testified she took an oral test to obtain her driver's license. (Tr. 266). Plaintiff testified she worked as a cashier off and on for a number of years. (Tr. 267). Plaintiff testified she has problems with asthma, seizures, headaches, pelvic disease and right ankle problems (Tr. 269, 273, 280, 283-284). Plaintiff has also taken medication for depression. (Tr. 281). Plaintiff testified she has tried to find a job but no one will hire her because of her seizure disorder. (Tr. 278).

Plaintiff described a typical day as getting up and fixing breakfast for her husband, cleaning the house, taking care of the cats and dog, and watching television. (Tr. 275-276). Plaintiff

---

[1] We note we consider this evidence, as it was submitted to the Appeals Council and the Appeals Council considered it before denying review. (Tr. 4-7). *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

AO72A
(Rev. 8/82)

testified she goes to church every Sunday. With regard to physical abilities, plaintiff testified she can stand and walk about an hour. (Tr. 286).

Mr. Dale Thomas, a vocational expert, testified plaintiff's past relevant work consisted of work as a cashier and a fast food worker which are both considered light, unskilled work. (Tr. 289). After listening to the ALJ's hypothetical question, Mr. Thomas opined plaintiff could perform her past relevant work. (Tr. 292).

The pertinent medical evidence in this case reflects the following. On August 17, 2001, plaintiff complained of low back pain that radiated around her abdomen and pelvic area. (Tr. 201). Plaintiff also reported feeling nauseated, experiencing pain with intercourse and having difficulty sleeping. Plaintiff indicated she would like to get pregnant. Upon examining plaintiff, Dr. J. Burch noted plaintiff's back was unremarkable with no tenderness, her abdomen was benign, but her pelvic exam did show moderate tenderness. Dr. Burch opined plaintiff could possibly have PID and put her on Erythromycin for ten days and gave her twenty Vicodin.

Progress notes dated October 26, 2001, report plaintiff moved back to the area and needed a medication refill. (Tr. 169). Plaintiff reported she was using Albuterol and Aerobid to treat asthma. Dr. T. Nguyen assessed plaintiff with asthma and pharyngitis. Plaintiff was given a prescription for Pen Vee K and Phenergan. She was also given samples of Serevent MDI. Plaintiff reported she could not afford any medications. Dr. Nguyen indicated he would like to see plaintiff back once she had a TCMS card.

On December 3, 2001, plaintiff sought treatment for an ulcer in her mouth and for problems with her asthma. Dr. Nguyen assessed plaintiff with an aphthous ulcer and asthma. Plaintiff was given a prescription for Proventil and samples of Flovent and Serevent. She was to return in two weeks.

On December 28, 2001, plaintiff complained of headaches. (Tr. 164). Plaintiff reported she had been experiencing headaches for the past five years. Plaintiff reported her headaches made her nauseous. Plaintiff reported she had experienced seizures since she was three and had her last seizure about three months ago. Plaintiff reported she was not taking any medication for the seizures. Dr. Nguyen assessed plaintiff with headaches and seizures. Plaintiff was scheduled for a neurology consult and was given Midrin.

In progress notes dated January 15, 2002, plaintiff reported for a follow-up for a seizure disorder. (Tr. 161). Dr. Nazizh N. Ali assessed plaintiff with a seizure disorder and an upper respiratory infection. Since plaintiff was already on antibiotics, Dr. Ali added Phenergan with codeine and Dilantin. He also recommended plaintiff undergo a CAT scan of the head. The CT scan was performed on February 6, 2002, and was normal. (Tr. 159).

Progress notes dated February 27, 2002, report plaintiff presented for medications for her asthma. (Tr. 158). Plaintiff reported she had been using an over-the-counter cough medication that was not working and her mother's albuterol nebulizer. Plaintiff was assessed with bronchitis/asthma. She was given Albuterol for the nebulizer and a peak flow meter.

On March 12, 2002, plaintiff complained of seizure-like activity. (Tr. 153-154). Plaintiff reported episodes of generalized shaking and rolling of her eyes once a month. Plaintiff reported this occurred when she was mad. Plaintiff was taking Dilantin but continued to experience these episodes. Dr. Boota Singh Chahil's impression indicated seizure disorder with occasional breakthrough seizures and pregnancy. Dr. Chahil recommended plaintiff continue taking Zonegran because she had been doing fairly well since taking this medication and had not had a seizure for almost four months. Dr. Chahil further recommended not changing plaintiff's medication during her pregnancy.

4

On March 13, 2002, plaintiff complained of upper arm pain. (Tr. 151). Plaintiff also reported that Midrin did not relieve her migraine headaches. Plaintiff reported that she had been stabbed in the arm by her ex-husband several years ago and that is the starting point of pain.

On March 28, 2002, plaintiff complained of burning when voiding for about a week. (Tr. 148). She had no other complaints, but she did report feeling a little bit jittery and a little sweaty at night. Dr. Nguyen assessed plaintiff with a goiter and an urinary tract infection. Plaintiff was given a prescription for Bactrim. On April 2, 2002, plaintiff was treated for a yeast infection. (Tr. 147).

On April 9, 2002, plaintiff was seen for a follow-up for her history of seizure-like activity especially when she was under stress. (Tr. 146). Dr. Chahil noted during plaintiff's last visit her Dilantin was changed to Tegretol and that plaintiff was doing well. Plaintiff denied seizure-like activity but complained of headaches. Plaintiff was continued on Tegretol and started on Neurontin for her headaches.

On April 24, 2002, plaintiff complained of right ankle pain for the past two weeks. (Tr. 143). An x-ray of plaintiff's ankle revealed no acute abnormality. (Tr. 144).

On April 29, 2002, plaintiff complained of depression for the past two months. (Tr. 142). Plaintiff was given a prescription for Elavil and was referred to Mental Health. Plaintiff was given another prescription for Elavil on May 3, 2002. (Tr. 141).

On June 2, 2002, plaintiff complained of worsening right-sided pelvic pain and radiating back pain. (Tr. 124). Plaintiff was assessed with right-sided pelvic pain and right ectopic pregnancy. (Tr. 125). Plaintiff underwent an exploratory laparotomy, right salpingectomy and a partial right ovarian resection. (Tr. 126-127). Treatment notes indicate there were no complications during the procedure and the postop course was uneventful. (Tr. 123).

5

On July 18, 2002, plaintiff entered the Johnson Regional Medical Center emergency room complaining of experiencing a possible seizure at home. (Tr. 180). Plaintiff was discharged home in stable condition and was told to see here neurologist as soon as possible.

On July 23, 2002, plaintiff entered the Johnson Regional Medical Center emergency room after being involved in a motor vehicle accident. (Tr. 175). Plaintiff complained of posterior right-sided neck pain, low back pain and right wrist pain. X-rays of plaintiff's cervical and lumbar spine were negative. (Tr. 176). An x-ray of plaintiff's right wrist showed some question of a disruption of the cortex of the distal radius but Dr. Ashley Burnham opined that this might just be overlapping shadows. (Tr. 176). Dr. Burnham indicated the remaining osseous structures were intact and unremarkable.

On this same date, plaintiff was seen by Ms. Susan Gateley, NP. (Tr. 201). Ms. Gateley noted she had not seen plaintiff for some time because plaintiff moved to California. At the time of this evaluation, plaintiff was taking Neurontin, Carbamazepine, Amitriptyline which worked well for her depression and insomnia, Albuterol for her asthma and Depo-Provera. Ms. Gateley consulted with Dr. Burch and set up an appointment with neurologist, Dr. Tonya Phillips.

On July 25, 2002, plaintiff presented for a follow-up for her wrist pain. (Tr. 198). Plaintiff reported Hydrocodone did not relieve hr pain. Plaintiff reported she was still wrapping her left ankle in an ace wrap and that she was wearing her arm brace most of the time. An examination of plaintiff's wrist revealed some tenderness to palpation over the distal radius, normal range of motion in the wrist and fingers and intact pulses. Plaintiff was also bearing weight on her ankle without problems. The examiner did not think plaintiff needed a cast and would not give plaintiff Oxycontin for her pain. The examiner recommended she continue to take Ibuprofen. She was also given samples of Celebrex to take in lieu of Ibuprofen to see if it worked. Plaintiff was also given

AO72A
(Rev. 8/82)

a few Percocet. Plaintiff was to continue using her brace as long as she was experiencing discomfort.

On August 5, 2002, plaintiff complained of bleeding for three weeks. (Tr. 195). Plaintiff had just started taking Depo-Provera in June. Plaintiff also complained of a little low abdominal pain. The examiner opined plaintiff had not adjusted to Depo-Provera. (Tr. 192).

On August 19, 2002, plaintiff reported she had not filled her prescriptions for a couple of Percocet or Celebrex due to the lack of finances. (Tr. 192). At this time, plaintiff complained of a lot of pain between the shoulder blades. Plaintiff reported having problems with her wrist but she had full range of motion. Plaintiff reported Ibuprofen was not helping. Upon examination, the examiner noted plaintiff had some point tenderness over the thoracic spine in one small area and had full range of motion of both arms. Plaintiff was able to reproduce pain by rolling her shoulders forward. Notes indicate plaintiff appeared "quite comfortable while just sitting in the exam room." Samples of Bextra were given to plaintiff for pain.

On September 19, 2002, plaintiff reported having problems with asthma. (Tr. 189). Plaintiff was started on Flovent.

On September 23, 2002, plaintiff reported she was still having discomfort in her right wrist. (Tr. 187). She attributed this to doing a lot of ironing in the home. Upon examination, no swelling was observed and plaintiff had full range of motion and a good grip. Plaintiff was given Darvocet for pain because plaintiff reported Ibuprofen was not working.

On October 4, 2002, plaintiff complained of an asthma flare-up. (Tr. 186). Plaintiff reported her Albuterol was not working like it should. Plaintiff reported that the updraft machine had helped her in the emergency room and would like to have a machine at home. Plaintiff was given a prescription for an updraft machine.

AO72A
(Rev. 8/82)

On November 21, 2002, plaintiff complained of uterus pain for a week. (Tr. 181). After examining plaintiff, the examiner gave her doxycycline and twenty Vicodin.

On October 9, 2002, plaintiff complained of a five day history of nausea and vomiting and abdominal pain. (Tr. 186). The examiner thought the cause could be viral gastritis. Plaintiff was given Phenergan.

On February 10, 2003, Dr. Burch completed a seizure disorder report. (Tr. 202). Dr. Burch indicated plaintiff was started on seizure medication in March of 2002, and that plaintiff's last reported seizure was in November of 2002.

On February 20, 2003, a non-examining, medical consultant, completed a RFC assessment stating that plaintiff had no exertional limitations, no postural limitations, no manipulative limitations, no visual limitations and no communicative limitations. The examiner opined plaintiff should avoid all exposure to hazards. (Tr. 203-210).

On August 7, 2003, a x-ray of plaintiff's right humerus and shoulder showed calcific tendinitis of the right shoulder. (Tr. 215, 221). Plaintiff was seen in the emergency room for right shoulder pain and was instructed to use a splint for two days. (Tr. 222).

On June 10, 2003, plaintiff complained of vomiting for the past three days and the inability to keep food or medication down. (Tr. 227). Plaintiff reported her period was four months ago but a pregnancy test was negative. Plaintiff was given a liter of Saline. Since plaintiff was driving she was given Phenergan and Ativan to take at home. Plaintiff was to re-start her Tegretol

On September 11, 2003, plaintiff presented to Dr. Tonya L. Phillips office for a follow-up of her complex partial epilepsy with secondary generalization. (Tr. 230). Dr. Phillips noted plaintiff was not taking her medication as recommended. Plaintiff reported having four parital

8

seizures a month. Dr. Phillips recommended doing an EEG but plaintiff did not have the finances. Plaintiff's medication was increased and she was instructed to refrain from driving and activity.

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff

AO72A
(Rev. 8/82)

must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

**Discussion**:

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir.2003).

AO72A
(Rev. 8/82)

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

Plaintiff alleges a disabling seizure disorder. The ALJ addressed plaintiff's seizure disorder and discussed plaintiff's treatment. As the ALJ pointed out, plaintiff's seizure disorder seems to be controlled with medication when she takes her medication as prescribed. *See Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) (citations omitted). The medical evidence further establishes plaintiff's asthma was controlled with medication. *Id.* Accordingly, we find substantial evidence to support plaintiff does not have a disabling seizure disorder or asthma impairment.

With regard to plaintiff's right shoulder and ankle pain, the record does not indicate plaintiff sought on-going treatment for these problems. *See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain) An X-ray of plaintiff's ankle was negative in April of 2002, and plaintiff was noted to be weight bearing on her ankle in July of 2002. (Tr. 143-144, 198). As for plaintiff's right shoulder, x-ray evidence did suggest possible calcific tendinitis. Plaintiff was instructed to use a brace for two days but there is no indication that plaintiff returned for treatment of her shoulder. *Id.* We find substantial evidence supporting the ALJ's determination that plaintiff does not have disabling ankle or shoulder impairments.

Plaintiff has also sought treatment for headaches. The record reveals plaintiff at first indicated that Maxalt was relieving her headaches. (Tr. 250). However in May of 2003, plaintiff reported that Maxalt was not working so she was started on Imitrex. (Tr. 246). While there are no

11

further medical records indicating whether or not plaintiff experienced more relief with Imitrex, at the hearing in September of 2003, plaintiff reported she might have a migraine every two months. (Tr. 280). She further testified that she was no longer taking medication for her headaches because she was trying to become pregnant. Based on the record as a whole, we find substantial evidence supporting the ALJ's determination that plaintiff did not have disabling headaches.

With regard to plaintiff's intellectual functioning, plaintiff argues the ALJ erred in not sending plaintiff to a consultative examiner to establish her level of intellectual functioning. The ALJ determined plaintiff was able to perform her past relevant work. Plaintiff testified she had worked as a cashier for around two years. The record establishes plaintiff was able to complete administrative forms on her own and there is no evidence suggesting that plaintiff had a decline in her intellectual ability. (Tr.93-97, 98-99). It is plaintiff burden to prove she cannot perform her past relevant work and we do not find she met that burden. *Eichelberger v. Barnhart*, 390 F.3d 584 (8th Cir. 2004)(The burden is on the claimant to demonstrate that he or she is unable to do past relevant work). Accordingly, we find substantial evidence supporting the ALJ's determination that plaintiff was the intellectual capability to return to her past relevant work as a cashier.

Finally, we find substantial evidence supporting the ALJ's determination that plaintiff did not have severe depression. The ALJ noted that while plaintiff was given medication by her primary care physician for depression, plaintiff never sought treatment from a mental health professional. *See Jones v. Callahan*, 122 F.3d 1148, 1153 (8th Cir. 1997) (ALJ properly concluded claimant did not have a severe mental impairment, where claimant was not undergoing regular mental-health treatment or regularly taking psychiatric medications, and where his daily activities were not restricted from emotional causes). Furthermroe, plaintiff was referred to the

AO72A
(Rev. 8/82)

Mental Health clinic but there is no indication that she made an appointment or sought treatment. Plaintiff also testified that the medication she was given to treat her depression helped "a lot."

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities. In a Supplemental Outline dated January 1, 2003, plaintiff indicated she is able to take care of her personal needs; to perform many household chores including doing dishes, washing laundry, changing sheets, ironing, vacuuming/sweeping, taking out the trash and washing the car; to shop and do errands; to prepare meals; to pay bills; to drive, walk for errands and exercise and use public transportation; and to attend church, watch television, listen to the radio, play video games, read and visit with friends and relatives. (Tr. 93-94). At the hearing plaintiff reported that she made breakfast for her husband, cleaned the house and took care of her pets. (Tr. 275-276). Furthermore, in the medical evidence submitted to the Appeals Council plaintiff reported she had been taking care of an eighty-nine year old person. (Tr. 250). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain prior to her date last insured. See *Cruze v. Chater,* 85 F.3d 1320, 1324 (8th Cir.1996) (mowed lawn, shopped, odds jobs and visits town); *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving- were inconsistent with claim of total disability); *See Polaski* at 1322.

With regard to side effects caused by her medications, at the administrative hearing in September of 2003, plaintiff testified she did not experience any side effects from her medication. (Tr. 281-282).

13

Therefore, although it is clear that plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

AO72A
(Rev. 8/82)

In the present case, the ALJ determined plaintiff retained the RFC to perform a full range of light work. Plaintiff's capacity to perform this level of work is further supported by the fact that plaintiff's examining physicians placed no restrictions on her activities. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Therefore, based on all of the evidence contained in the file, we find substantial evidence supporting his RFC determination.

Next, we look to the ALJ's determination that plaintiff could perform substantial gainful employment within the national economy. We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff is not disabled as she is able to perform her past relevant work as a cashier. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 20th day of March 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

15

AO72A
(Rev. 8/82)

AO72A
(Rev. 8/82)